Good morning, your honors. Doug Keller on behalf of Ms. Potenciano. The District Court erred by not giving defense counsel a chance, a meaningful chance, to question Agent Kiesel about his testimony and redirect about blind mules. Agent Kiesel on redirect told the jury that blind mules essentially only exist in cases involving a small amount of marijuana. Testimony that amounted to a claim that Ms. Potenciano's defense was impossible because it depended on the never-having-happened to happen. The law and frankly any basic notion of fairness require the defense counsel have that chance to question Agent Kiesel about this incredibly damaging testimony that the government can't put someone in prison for a decade based on a free shot like that. Now the government claims that the defense didn't have a right to question Agent Kiesel because nothing he said on redirect was quote new information based on what he had said on a cross, but that just simply isn't true. Almost everything Agent Kiesel said on redirect about blind mules was would have been new information to the jury. When Agent Kiesel talked about blind mules, the first inquiry was by the defense counsel. That's correct. Agent Kiesel was supposed to be an expert, but there was some discussion regarding how he was going to be used as an expert and defense counsel apparently persuaded the court and the court kind of had a discussion about this on whether or not, you know, whose expert he was and how he was going to be utilized. So isn't there an argument to be made that the expert was really a defense expert for that purpose and that would have been direct examination? I think even if you view it that way, let's just assume we had called him in fact and we had elicited this information from him on direct. And that's my question, would have had any effect at all? It wouldn't because we still would have had the right to redirect him in an attempt to undermine the bad information the government would have elicited on cross. So the fact that we sort of called him out of order I doesn't affect the issue. Let me follow up on Judge Merguia's question. My understanding is that the trial court held a couple of hearings preliminary to the trial and at one of those hearings, I think one of them maybe was a Daubert hearing, I can't remember for sure, at one of those hearings it was disclosed through, it's described as a motion in limine on the record, but it looked to me like an expert disclosure that the government was going to call special agent Kiesel and at that time the defense indicated that they may elicit testimony from him as well on certain subjects. Is that correct? I don't think it quite worked out that way. I think what happened is that in discovery that the government disclosed to us lots of information about blind mules. They then noticed agent Kiesel to be an expert on the value of drugs. The government then followed a motion in limine preemptively saying that we were not allowed to ask agent Kiesel essentially about the discovery that they disclosed to us. Okay, but is it true that at the time of the preliminary preliminary hearing held before the trial judge that you indicated to the trial judge that you may elicit certain expert testimony from special agent Kiesel when, if he testified at trial, correct? Yes, that's correct. Okay, was that actually, did that intent actually find its way into any sort of a pretrial expert disclosure from the defendant? No. So following up on what Judge Merguia said, and we hadn't had a chance to talk about this, but I saw it the same way. It looked to me like what happened is that he was called for evaluation purposes by the government, then during the course of cross examination, there was cross examination conducted on that subject, and then your co-counsel at trial decided to convert special agent Kiesel into a defense expert witness on the subject of drug trafficking using blind mules to get some favorable testimony. It happened on cross. I don't know if it was done through leading questions or direct questions, but it was an attempt made by the defense to convert this government expert into a favorable expert for the defense, and then on redirect, which could be characterized as cross, I suppose, by the government on that subject, there was, they further explored the subject of utilizing mules to traffic in drugs and got the testimony that typically it was done in marijuana cases and not the other sorts of cases, and then your co-counsel proceeded to conduct additional examination, got started down that path, and the trial court said, in effect, enough already. We're done with this witness. This witness is excused. Isn't that kind of what happened? Yeah, I could quibble, but I think that's generally what happened. Okay, now, did you object at that time? We didn't object because we were literally cut off mid-question and the witness was told to get off the stand. Did you make an offer of proof as to what your questioning would have been if you'd been allowed to continue questioning? We never had the opportunity. Well, did you ask the court if you could make an offer of proof? We didn't, and I don't think the rules required us to. I don't think the rules required us to because, I think, for a few main reasons. One, I don't think the judge ever really gave us a chance to do that. The judge cut us off mid-questioning and told the witness, you know, you're done, get off the stand. I don't think we need to interrupt the judge and tell him what we were gonna ask. And two, to maybe give a little credit to the judge, it wasn't any mystery what we were gonna ask, right? Like, the entire redirect had been about blind mules. We started questioning the witness about blind mules. I think the judge knew we were going, so I don't think he necessarily wanted to hear an objection or hear a proffer. He knew, more or less, generally speaking, what we were gonna ask, and he decided that information wasn't worth the jury's time. I think that was just... Counsel, Judge Gould, if I could ask you a question on that. Did anything stop your client at trial from asking the court to let you bring this witness back as part of the defense case? Because as I read the papers before me, it suggested that there was this interchange that Judge Christensen described, where the judge more or less says, we can't let this go on forever, and ends the recross, but the defense still had its case to present, right? So, did the defense, during its case, ever say, we want to call Agent Keisel back, because we didn't get to go far enough in? We didn't, and I don't think it would have occurred to most attorneys to even try. We had a judge telling us that we were wasting time by asking a witness questions, so I don't think we need to risk the judge's ire by telling the judge that same witness that you think we're wasting time with, we're not gonna call him and subject him to more questioning. You would have made a record, though. Well, but I guess then that goes back to my initial point that I don't think we needed to, based on the context of what happened here. You know, I think just as a matter of the rules, under Rule 51, we weren't required to say more, but setting that aside... Let's assume this was a cross, and you weren't allowed to recross like you would have liked, and let's assume that a new matter was raised, although I'm not sure that that's true, because of everything that defense counsel was able to ask on their cross, or, you know, what you're calling the cross, and what was called the cross down below. Let's just assume that happened. What is it that you think would have made a We're trying to figure out if what you have indicated in your briefs would really have affected the outcome of the case, and what you have outlined in your brief is four sort of questions, and I'm not just trying to figure out if that's enough. Some of them seems like they would have been cumulative, so give me your best argument. I think the crux of, I think, the argument is that the most damaging thing Agent Kiesel was allowed to tell the jury was that the most damaging things do not exist in cases involving a small amount of marijuana, which was the equivalent of telling the jury that Ms. Potenciano's defense was a shame. He said, but he didn't say in every case. I mean, he qualified it and said in most cases. He said the last case. Wouldn't you have just come back and said, well, that's not true in every case? No, because what the jury never heard, the important piece of information the jury never heard, which the prosecutor told the judge during the motion to eliminate hearing, is that Agent Kiesel, it's not as if he'd gone out and done an exhaustive research on blind mules in the country. The only thing he knew about blind mules was from the random conversations he might have had with other agents and the discovery in this case that the government had been producing. That was it. So if I'm a juror and I have someone tell me that I know that it's just not possible, it's very, very unlikely that blind mules exist in these sort of circumstances, I view the testimony very differently if I'm told that this person didn't exhaustively cover the idea of blind mules. And especially because all of Agent Kiesel's understanding about blind mules was cases involving random people who had been randomly selected because of their repeated crossings at certain times. That wasn't our defense. Our defense was that the drug traffickers knew our... So you knew that at the time. That's why you wanted to further recross. Yes. But you didn't make a proffer. But I agree, Your Honor, we didn't make a proffer, I agree with you, but I also don't think... I don't think that's fatal to you right now. No, I think it's not fatal for, you know, the two reasons. One is that the rules don't require us to interrupt a judge in proffers after he's already shut us down. But two, it was clear to the judge what we wanted to ask. That this information had come out in front of the judge pre-trial. So the judge knew it, we knew it, we started asking questions about blind mules. So I don't think it was any mystery to the judge what we were trying to get at. Well, I don't know. I mean, as a trial judge, you know, frequently I change my mind. I might say I'm not going to allow certain evidence. I think Judge Gould makes a very, very valid point. That is, you could have subpoenaed Special Agent Kiesel, brought him in, put him on the stand, and if Judge Benitez at that point said, I've heard enough from Special Agent Kiesel, I'm not going to allow you to ask this witness any questions, then I would understand you might have an issue here. But I'm just, I'm concerned about the lack of self-help here and the fact that you apparently concluded, based upon the fact that he sua sponte excused this witness, that it wasn't worthwhile for you to make a proffer, object, call this witness, and persist to a certain point to see if you couldn't change the judge's mind and get the testimony. Anyway, that's a speech, not a question. Let me ask a question. In my court, I tell the jury on the record, before a trial, that there will be direct testimony, cross-examination, redirect, and no recross, unless new material comes out on redirect, that is prejudicial. Does Judge Benitez have a similar practice? Did he provide you with similar advice, direction on the record? He definitely didn't, and that's just not his practice. I've actually never seen him cut someone off on recross before, and in fact, in this case, I believe at least one, if not two, the witnesses were subject to recross. All right, thank you. Do you have anything else? I have a question, yeah. And of course, I didn't practice criminal law, I practiced civil law in trials, and so maybe this has no analogy, but in a lot of cases, I would think if a lawyer was cut off in that way on their examination, that the lawyer would at least say, Your Honor, we'd like to ask two or three more questions on this or that subject. It will take a certain amount of time. Like, they wouldn't just fold their tents and then later say there's a constitutional violation. So that's really the part of this case I'm having trouble understanding. The appellant's position on it says, Why didn't the appellant's lawyer at least give the judge some idea of what else they wanted to ask or else force the issue, as Judge Christensen said, by calling the witness in there case in chief and putting a question to him. Well, Your Honor, I'm sure you know a lot of trial strategies, knowing your judge and knowing whether the judge would be receptive to that sort of thing. I think here the reality is that I don't think Judge Benitez would have wanted her to hear the exact questions you were going to ask, given that I think at least it was sort of obvious in context. I think that's at least the calculus the trial attorneys made at the time, that in context, there was no mystery where we were going with this and that he had cut us off abruptly mid-question and then told the witness to get off the stand. So I honestly don't think it's fair to expect trial counsel to, in the face of a judge who's obviously a little annoyed with where questioning was going, to interrupt him and give a proffer about what you were going to ask when, at least from trial counsel's perspective, was sort of obvious in context. And I think that's sort of the same calculus applied when you're trying to determine whether you should have recalled that same witness. When you had a judge tell you that you're wasting the jury's time in front of the jury and then ask the judge to have that same witness be subjected to additional questioning in your case. It's maybe uncomfortable. It seems like, you know, making a record is important and it would also give the judge, whether it's Judge Benitez or any other judge, an opportunity to re-evaluate his right in that moment at the very next break before he left. You could have said, Judge, you know, cut us off, but, and we'd had some discussions regarding this before, really think it's important and we'd like to make a proffer. We'd like to make, you know, for the record as to why we think this affects, you know, our constitutional right of my defendant. I just can't imagine that a judge is going to cut you off or, at that point, but maybe I'm wrong, but if he does, then it's on the record and then we get to evaluate it. I mean, the only thing I can say, Your Honor, is I understand where you're coming from and maybe it would have been best practice for them to say more, but I think the key word in your question was asking the judge to re-evaluate his decision. The rules expressly tell us we don't have to do that, that once we've objected or once they've just cut us off, we don't have to ask the judge to re-evaluate in order to preserve an issue for appeal. Yeah, but you didn't object. Well, but we didn't object because, you know, we were cut off, right? So there's no need to tell the judge we don't agree with what you're doing when we're asking questions. But you could take, you could take an exception, correct? We could have, and the rules expressly tell us we don't need to do that. So I think that's where trial counsel was going with, that we would have, if an objection really would have been an exception, and under Rule 51, we don't need to raise exceptions, even if sometimes, maybe this is the case, that it might have been best practice to. I see Thank you. So, Ms. Reese Fox, did the government object when the defendants started getting into material that was beyond the scope of direct examination? Well, Your Honor, in the pretrial hearing, there was lengthy discussion about whether this expert was qualified to testify on blind mules, and Judge Bonita said, how is this within the scope of direct? And Defense Counsel fought very hard to get, allow this order of presentation. He argued it in the morning, he came back in the afternoon with a transcript of a prior case, and he said, this is how we want to do it. Eventually, the government said, okay, that's fine. The rules do allow, in the court's discretion, the court can allow new cross-examination. And so, the government... So, it's allow the defendant to convert your witness into a favorable expert in the course of cross-examination. Yes, Your Honor. So, the government agreed and allowed that to happen, based on the court's indication that he was probably going to allow it. Yes, Your Honor. Yes. Okay. So, it comes in, and then you conduct, not you, were you trial counsel? No, Your Honor. All right. So, trial counsel for the government conducts redirect, following up on this new material, and got in this testimony that the overwhelming majority of these cases, whether curing drugs or marijuana cases, and then on whether we want to call it recross or redirect as to that issue by the defendant, they weren't able to follow up, and the judge to respond, they brought it to an end, and excused the witness. Do they have a valid confrontation constitutional argument here? No, Your Honor. The constitutional argument was not preserved, which I think is what the court was touching on during the first part of this argument. Even if defense counsel sitting down when the court cut her off were enough to preserve some evidentiary objection, this court has said in numerous cases that a confrontation clause argument needs to be specifically preserved. So, there are cases where there's a hearsay objection, and the court has found that insufficient to preserve a confrontation clause objection. Your colleague across the aisle here, Mr. Keller, says that Rule 51 doesn't require that. Rule 51 wouldn't require taking an exception to sort of the evidentiary analog, which is the sort of the cutting off of recross examination, which is within the court's discretion. But as to the confrontation clause issue, there was no objection. Defense counsel had numerous opportunities in that moment taking a sidebar. The government rested right after that testimony. At that point, defense counsel could have proffered the questions or even just said, Your Honor, we believe that under the confrontation clause, we have a right to further recross examination. Or when the defense began its own case in chief, it called two witnesses. And so, as Judge Gould and Your Honors noted, it could have asked to recall Agent Kiesel. This isn't a defense counsel who was afraid to fight for the defense that they wanted to raise. Indeed, they did that in pretrial. So, it's just not reasonable on this record to say that defense counsel didn't have an opportunity to object. But I believe your question was, is there a confrontation clause violation? So, I don't believe there's an error. And I certainly don't believe that the remaining prongs of plain error are satisfied. But even as to error, the courts have uniformly held that the standard is whether there is new matter elicited on redirect. And as to that new matter, then there is a right to recross. And I don't think it was obvious that there was new matter. The blind mule testimony that first came out, defense counsel focused on two things, that a drug trafficking organization needs access and opportunity. They need to be able to access the vehicle and they need to know where the vehicle is going. And that was the essence of the cross examination, which was effectively the direct examination. The majority of the government's redirect, which was the cross examination on that, focused on those things, access and opportunity. To the extent that the testimony about the majority of cases also came out, that was not in and of itself obvious to anyone that it was something brand new that no one could have anticipated that there was a constitutional right to confront. But this court doesn't need to decide the confrontation clause issue because whether you find the error preserved or not, there's a harmlessness analysis. So, if the alleged error was somehow preserved, you still get to the harmlessness analysis, or you have prongs two, three, and four plain error review. And the failure to preserve bears on both prongs two, three, and four. Let's talk about the harmlessness analysis. It seems like the blind mule, I think you'll agree, defense was central to the defendant, that she was not a courier. Is that correct? Yes. Yes, Your Honor. So, let's just play this out for me, please. If we find the district court error when it restricted recross, I think, how can we find, or how would you argue that beyond a reasonable doubt, the district court's error did not affect the outcome? Well, first, Your Honor, there would be the plainness of the error. So, you'd also have to and I believe the failure to preserve or even if it's somehow the judge should have known, it's still not obvious at all, clear or obvious that there was new matter. So, there's still the plainness. But if you're talking about the substantial rights prong or the harmless beyond a reasonable doubt prong. But, I mean, if the research was just talking to other people, that's not insignificant. I mean, the way the agent talked about, he'd done some it was, as is being proffered now, that it was just him talking to people and his colleagues. That's not insignificant. So, I guess, just tell me your best argument as to why there's no harmless error. Numerous courts that we've cited, maybe a half dozen cases in our brief at pages 29 and 30, have said that the fact that the defense could have recalled that witness in their case in chief, in and of itself, shows that the error is harmless. And we certainly have that here. The agent was there. The defense chose to use them as their expert. And they certainly could have said, especially in the case of their defense case, that they had said, Judge Benitez, this is critical to our defense. We need to call this witness. I don't think Judge Benitez would have said, no, no, you've already done it. And then to the sort of other factors, which this court set out in the Baker case, the question is, assuming the damaging potential of the recross examination is fully realized, is the error nonetheless harmless? So, let's say, the damaging, that they've completely undermined everything that this witness said. So, now, they basically neutralized this idea about the majority of cases, of blind mule cases, having to do with marijuana. The jury still has to evaluate for itself whether this defendant was likely an unknowing courier. And I want to emphasize a few things. This was 50 pounds of drugs, which was worth, the heroin and the methamphetamine alone was $100,000. And then there were an additional 26 pounds of fentanyl, for which we don't have a value. That's a lot of drugs. From that, the jury could easily infer that this abusive boyfriend is not going to trust his girlfriend with all of these drugs without telling her they're there. In fact, she even testified at ER 211 that the reason he was deported was because she called the police on him when he threatened her with a knife. So, there's ample evidence in the record to show that the jury was not going to believe this unknowing courier defense, even if the experts' testimony were completely neutralized. So, I think on both of those bases, you could find both no effect on her substantial rights, or that the error was, any error was harmless beyond a reasonable doubt. I see. Any other questions? So, here's my question. And sorry for keeping you over time. But I've had a lot of Confrontation Clause cases where the issue was raised because someone wasn't allowed to cross-examine at all. This is the only one that I've considered that deals with a limitation on recross where the party could have the right still to call the witness again in their defense case. Are there any published precedents from our court or the Supreme Court dealing with that specifically? Your Honor, with the ability to recall that specific situation, I'm going to make sure, but I don't believe so. There are cases from numerous other circuits. I cannot find the cases at the time, but we cited them in our brief. There's cases from numerous other circuits that that in and of itself is determinative of the harmlessness question. The central case from this court is the Baker case, and that goes through a series of factors that bear on the harmless error analysis. But I don't believe this court has ever found that the ability to recall a witness itself is determinative in harmlessness. But do you think the other circuits have? Yes, Your Honor. Okay, thank you. Thank you, Your Honor. I know I've gone over my time. Yeah, I'll give you a minute. Okay, just briefly, I wanted to make three quick points. The first, and Your Honor, I'll just read you the quote where the government explains to the court pre-trial what Agent Kiesel knew about blind mules. This is from ER 25, and he says, and I quote, as far as I know, he is no experienced unknowing courier. So it would have been something along the lines of the same way he gained his expert knowledge, which is talking with his fellow law enforcement officers and talking with people that he's interviewed. That would be the basis for his knowledge. That's it. The jury never heard that. Secondly, the recall cases, without exception, every recall case the government cites here where the defense was able to recall, was allegedly allowed to recall the witness. And the judge heard that in your prior discussions? Is that what you were saying right now? Yes, that came out in court when we were in the discussion of what this witness knew about blind mules. All right, go ahead. All of the cases the government cites, too, in which courts, out-of-circuit courts have said that you could have just recalled the witness, every single one of those cases were cases where the court had a bright line rule. You cannot read across, period. And so the impediment to calling, there was no impediment to calling the witness as your own witness. Whereas in our case, there was an impediment. The court had told us the testimony was wasting the jury's time, which would have been an impediment whether we called him as our own witness or whether he was being recrossed or redirected. And I think that's really all I have. If the court has no further questions, I'll submit. Thank you, Your Honor. Thank you both for your arguments here today. They've been very helpful. Ms. Reese-Fox, Mr. Keller, the case of United States of America v. Graciela Potenciano is submitted.
judges: Gould, Murguia, Christensen